IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| vs. | : | Case No. 2:10CR86 |
| DANIEL E. MINAYA, | : | JUDGE FROST |
| Defendant. | : | |

**DEFENDANT'S SENTENCING MEMORANDUM**

When sentencing an offender in the post-*Booker* era, a district court must consider the applicable advisory United States Sentencing Guidelines imprisonment range as well as the other factors listed in 18 U.S.C. § 3553(a). The § 3553(a) factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, pertinent policy statements issued by the Sentencing Commission, and the need to avoid unwarranted sentence disparities. The objective of this process is to reach a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing listed in §3553(a)(2). *United States v. Lanesky*, 494 F.3d 558, 561 (6th Cir. 2007).

The district court must begin by correctly calculating the applicable advisory guidelines range. *Gall v. United States*, – U.S. –, 128 S.Ct. 586, 598, 169 L.Ed.2d 445 (2007). After giving the parties an opportunity to argue and recommend an appropriate sentence, the district court must consider the remaining § 3553(a) factors to determine whether they support the

recommended sentence. *Gall,* 128 S.Ct. at 596. The court may not presume the guidelines range is reasonable; rather, it must make a fact-based individualized assessment. *Id.* at 597; *Nelson v. United States,* – U.S. –, 129 S.Ct. 890 (2009).

In this sentencing memorandum, counsel for Defendant Daniel E. Minaya ("Daniel") will address each of the relevant statutory sentencing factors. He identifies several factors that he believes warrant a departure and/or variance from the advisory imprisonment range.

### §3553(a)(1) - Nature and Circumstances of the Offense

Daniel pled guilty to conspiracy to distribute and possess with intent to distribute over 100 kilograms of marijuana and over 500 grams of cocaine. Based on information from cooperating witnesses ("CW"), Daniel had been selling at least 500 pounds of marijuana from 2005 until 2010. Another CW described a situation in which Daniel was the middleman in a transaction involving the sale of one kilogram of cocaine in 2009 to Rigoberto Gomez-Gomez, but the transaction was not completed.

On two occasions between January and March 2010, Daniel met with a confidential sources ("CS") at his residence and offered to sell him marijuana. On the first occasion, Daniel showed the CS two eighteen pound blocks of marijuana and gave the CS a sample.  On the second occasion, Daniel showed the CS six forty-two pounds bags of marijuana. Later the same day, law enforcement executed a search warrant and seized the aforementioned marijuana, which had a laboratory weight of 114.94 kilograms.

Daniel accepts responsibility for his actions.  Daniel has three children,

and he admits that he was attracted to the drug business because he was struggling financially. Daniel realizes that he was wrong in his actions, and he is apologetic to the Court, the government, and the community for his involvement in trafficking drugs.

### §3553(a)(1) - Characteristics of the Offender

Daniel was born in 1959 in the Dominican Republic. He had a difficult and disadvantaged upbringing. At age 7, he was sexually abused by his maternal aunt. He told no one in his family and he did not seek any counseling. He came to the U.S. at age 9. Around this same time, his parents separated. His mother raised him and his four siblings. Daniel has had limited contact with his father since moving to the U.S.

It should not be surprising that Daniel started having substance abuse problems at an early age. He began drinking alcohol and smoking marijuana at age 13. His problems with drugs continued into adulthood. In the mid-1990s, Daniel underwent a 90 day inpatient program for substance abuse at the Salvation Army. However, similar to many individuals with substance abuse problems, he had difficulty removing drugs from his life. The continued substance abuse led to troubles with the law. Daniel has spent time in and out of jail. When he is out of jail, he falls into financial trouble and becomes depressed. This leads him to return to using and selling drugs.

After Daniel's last release from jail, he turned his life around. He worked with a financial company and was able to buy a house. Daniel has three children with whom he has a close and loving relationship. After he began

turning his life around, Daniel made up for financial support that he was unable to provide before. After the national housing collapse and financial crisis, Daniel lost his job and his house. He became depressed and foolishly returned to using and selling drugs.

Daniel also has a close relationship with his immediate family. His sister describes him as a good person who did not intend to harm anyone. It is her opinion that Daniel has good intentions, but his addiction to drugs and alcohol has affected him negatively. She believes that her brother has the ability to improve his life, and she is willing to allow him to live with her after he serves his sentence. She wants to help Daniel become a successful person.

Daniel is remorseful for his involvement in trafficking drugs, and he has taken responsibility for his actions. Further, he does not intend to be involved in criminal activity in the future.

### §3553(a)(3) & (4) - Kinds of Sentences Available and Guideline Sentencing Range

The probation officer has calculated a total offense level of 31, a criminal history category of VI, and an advisory guideline imprisonment 188 to 235 months. Imprisonment is mandatory. Daniel is categorized as a career offender.

Judges often depart or vary when the defendant is a career offender based on prior drug convictions. *See, e.g.*, *United States v. Malone*, slip op., 2008 U.S. Dist. LEXIS 13648 (E.D. Mich. Feb. 22, 2008); *United States v. Serrano*, slip op., 2005 WL 1214314 (S.D.N.Y. May 19, 2005) (imposing a below guideline sentence based on the fact that defendant was an addict, from which his offense stemmed, priors were remote, time previously served was less than one year).

4

Further, in *United States v. Moreland*, slip op., 2008 WL 904652 **10-13 (S.D. W. Va. Apr. 3, 2008), the judge found that (1) the inflexible requirement that any drug offense that meets the broad definition be counted regardless of the amount of drugs, sentence imposed, or length of time passed is unjust; (2) the guideline puts a prior conviction for distribution of one marijuana cigarette on a par with a drug kingpin or a violent offender who uses firearms to commit crimes, *i.e.*, unwarranted similarity; (3) the guideline reaches defendants who are neither the "repeat violent offenders" nor the "repeat drug traffickers" Congress meant to target; (4) distribution of one marijuana cigarette in 1992 and distribution of 6.92 g. crack in 1996 "hardly constitute the type and pattern of offenses that would indicate Mr. Moreland has made a career out of drug trafficking," and the entire amount distributed in defendant's lifetime (14.77 g. crack and a single marijuana cigarette) "would rattle around in a matchbox"; and (5) "disposal" to 30 years in prison would interfere with rehabilitation, where the defendant had an excellent chance of turning his life around.

In this case, Daniel should qualify for a departure from the advisory guidelines for career offenders. Daniel's prior convictions are drug convictions, license suspensions, or alcohol related convictions. Therefore, considering *Malone,* the Judge may depart from the career offender sentencing guidelines.

*Moreland* illustrates the importance of looking at the amount of drugs, sentences imposed, and the length of time of the previous convictions. Daniel's prior convictions for possession of drugs involved only small undetermined amounts of marijuana or cocaine. He was, however, convicted of drug

5

trafficking once prior but that was 18 years ago, in 1993. Since then, Daniel's convictions involved operating a motor vehicle while intoxicated, driving without a valid license, drug abuse (involving undetermined quantities of drugs), possession of cocaine (involving undetermined quantity), and driving under suspension. It has been 8 years since Daniel has been involved in a drug-related crime, and it has been 18 years since Daniel was convicted of trafficking. Since Daniel's last jail release, he tried to turn his life around, and he did for quite some time until the housing collapse and financial crisis caused him to lose his home and job.

*Moreland* also discusses the importance of differentiating between a defendant who is a drug kingpin as opposed to an addict who uses and sells drugs occasionally. Daniel is hardly a drug kingpin or a violent offender. While weapons were found in his home during the search, Daniel did not use those weapons in the commission of any of his prior criminal activity. Daniel is an individual who has an addiction problem, and has one prior conviction for trafficking 18 years ago. At different points in his life, he fell on hard times and unfortunately let his addiction get the best of him.

Daniel is not a "repeat violent offender." None of his prior convictions involve violence. Daniel has several prior drug convictions, but he is not a drug kingpin. He fell on hard times. Further, his last conviction for trafficking was 18 years ago. Daniel has also not made a career out of drug trafficking. After his last prison release, he made an honest living and turned his life around. He wanted to live a law-abiding life for himself and his family. Unfortunately, when he lost all that he had, he went back to drugs.

6

Similarly to *Moreland,* disposal to 15-16 years in prison would interfere with rehabilitation, where Daniel has an excellent chance of turning his life around. Daniel has acknowledged his wrongdoing, and he wants to a better life for himself and his family. His sister has offered to let him live with her after he serves his sentence. He has all the tools to make a fresh start and a longer prison sentence would impede that and interfere with rehabilitation.

Due to the aforementioned reasons, the defendant requests that the Court consider departing from the career offender sentencing guidelines, and give him the lower-end of the statutory sentence, which is 5 years.

### §3553(a)(2) - Compliance with Purposes of Sentencing

The so-called "parsimony clause" requires the Court to impose a sentence that is sufficient "but no more than necessary" to comply with the purposes of federal sentencing. These statutory purposes include the need for the sentence 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the offender; and 4) to provide the defendant with needed educational and vocational training, medical care or other correctional treatment in the most effective manner.

As discussed earlier in this memorandum, Daniel has substance abuse and addiction problems. He has admitted and apologized for his wrongdoing. Daniel turned his life around but fell on hard times again. Daniel wants to lead a law-abiding life. The major component in allowing Daniel to achieve that life is to offer him rehabilitative treatment, instead of increasing his prison

7

sentence. Increasing his prison sentence will not fulfill the purposes of sentencing.  Giving him treatment to help him overcome his addiction will allow him to become a productive member of society.  In his case, lengthy imprisonment is not needed to deter him or to protect the public from future crimes. He can obtain any needed educational or vocational training more easily while under supervision by the Court's probation department than he can in prison. There remains only the question of how long a period of confinement should be meted out to punish him adequately. Defense counsel asks the Court to consider departing from the career offender sentencing guidelines and require the defendant to serve the mandatory sentence of 5 years in prison, with an appropriate period of supervised release involving a drug treatment program thereafter. Such a sentence would further Daniel's rehabilitation and return to society.

     WHEREFORE, the defendant prays that the Court will grant him leniency and impose a sentence.

                                                 s/David P. Rieser
                                                 DAVID P. RIESER  (0025247)
                                                 Two Miranova Place, Suite 710
                                                 Columbus, Ohio 43215-7052
                                                 (614) 444-6556 (Office)
                                                 (614) 559-6603 (Fax)
                                                 ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

The CM/ECF electronic case filing system will automatically transmit a Notice of Electronic Filing to the United States Attorney for the Southern District of Ohio.

<pre>                                        s/David P. Rieser
                                        DAVID P. RIESER  (0025247)
                                        ATTORNEY FOR DEFENDANT</pre>